November term, 1807; and U. S. v. Abbot [Id. 14,415], in the district court. But see below, Johnson v. Chapman [Id. 7,378].

## Case No. 11,166.

### The PILGRIM.

[Cited in Pent v. The Ocean Belle, Case No. 10,961. Nowhere reported; opinion not now accessible.]

## Case No. 11,167.

### PILLOW v. ROBERTS.

[See Case No. 11,909.]

PILLSBURY (WHITHED v.). See Case No. 17,572.

## Case No. 11,168.

### The PILOT.

[1 Biss. 159.] [1]

Circuit Court, D. Michigan. June Term, 1857.[2]

RULES OF NAVIGATION — EXCEPTIONS — STEAMER MEETING SAIL VESSEL — ANSWER — WHEN SUFFICIENT—WHEN SAILING VESSEL SHOULD CHANGE HER COURSE.

1. There are exceptions to the general rules of navigation, for which no regulations can be provided. Under such circumstances each vessel should be managed with care and skill, to avoid a collision, and if there be a failure to do this, though a vessel be within the rule, she can claim no damages for injuries received. A strict adherence to the rule, which necessarily leads to a collision, affords no excuse to a vessel.

2. A steamer is required to give way to a sail vessel; yet, if she cannot do so without peril, the sail vessel must avoid her. It is no objection to the jurisdiction, that the sail vessel was less than twenty tons burden, nor that the collision was near the Canada shore.

3. An answer which sets up facts constituting negligence is sufficient, though no fault be formally charged. The rules of pleading in admiralty are less technical than at law.

4. The master of a steamer has a right to expect that an approaching sail vessel will change her course if she can do so without risk, and any other course will involve danger of collision.

5. No sail vessel which recklessly attempts to cross the line of a steamer when there is no necessity for doing so, and when the steamer could not give way without encountering peril, can be entitled to recover for an injury received.

[Appeal from district court of the United States for the district of Michigan.]

In admiralty.

Mr. Newberry, for libellant.

Mr. Duffield, for respondent.

McLEAN, Circuit Justice. The schooner Pilot, being on a voyage down the Lakes from Ellen creek, on Lake Huron, to Kingsburgh, on Lake Erie, on the 10th of June, 1856, at about half-past eleven in the forenoon, the wind blowing from the south-east, was beating down the Detroit river, and while steering from the American to the Canada side of the river, a little below Bois Blanc Island, the steamboat Pearl ran into the Pilot, cut through her hull, shear, bulwarks, decks and rigging, and destroyed her cargo in part, and caused her to fill with water so as to be damaged.

It is alleged in the libel that at the time of the collision, it was broad daylight; that the schooner kept her course, as she was bound to do, and that the collision occurred near the Canada bank, there being sufficient space for the Pearl to have passed the schooner, as the channel there is nearly half a mile wide, but she made no effort to avoid the schooner.

The answer states that the Pearl, being on a trip up the Detroit river to Detroit, when near to Malden saw the schooner beating down the river and heading towards the Canada shore, nearly abreast of the buoy, which was upon the shoal off Fort Malden; that the brig America, at the same time, occupied the center of the channel nearly abreast of the schooner, holding up the river, and when the schooner was about five hundred feet from the Pearl, her helm was ported and engine checked, and immediately afterwards her helm was put hard a-port, and her engine stopped; that the Pilot at that time was close upon the channel bank, so that it was supposed she would heave in stays, to avoid running on the shore; that the master of the Pearl intended to run inside of the Pilot, steering close to the channel bank; that he adopted that course because the Pearl was long, sharp, and difficult to steer, and if he had attempted to pass the right side of the Pilot, and it had gone about, a collision between the Pearl and the Pilot, or the brig would have been unavoidable.

The channel at the place of collision is between one-half and a quarter of a mile wide. The master of the Pilot says the brig was in about the middle of the river, sailing up the stream; there might have been, he says, fifteen or twenty rods between us. Had the Pearl put her helm a-starboard, a few minutes before the collision, he says, she would have passed our stern.

John Cary, master of the brig, says: "About mid-day when I was abreast of Fort Malden, I saw a small vessel beating down to the leeward of me. She was by the wind, with her starboard tacks aboard. At that time my vessel was about one-half the way across the channel from the fort. I was not certain from the position of the two vessels, that I should go clear of her. I called to her and asked her to go about. Some kind of an answer was made to me, which I did not understand. He did not go about. He stood along and just cleared our jib-boom. I think the vessel was the Pilot. After passing our bow she came up partly in the wind, and I supposed she intended to go about, but then

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

[2] [Reversing Case No. 8,849.]